UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM COBURN, et al., | No. 2:19-cv-00888-AC |
| Plaintiffs, | |
| v. | ORDER |
| CITY OF SACRAMENTO, et al., | |
| Defendants. | |

Plaintiffs William Coburn, Kristina Marie Mayorga, Khalil Ferguson, and Alex Lyons ("plaintiffs") bring this putative class action against defendants City of Sacramento, Sacramento Police Department, County of Sacramento, and Sacramento County Sherriff's Department alleging unconstitutional deprivations of federal and state constitutional rights resulting from unlawful and unconstitutional detentions, arrests, and uses of force while plaintiffs engaged in the lawful and peaceful exercise of their constitutionally protected rights by protesting the shooting death of Stephon Clark.  ECF No. 1, 3.  On April 30, 2020, plaintiffs moved for preliminary approval of class action settlement.  ECF No. 29.  Defendants City of Sacramento, County of Sacramento, and the Sacramento County Sherriff's Department submitted statements of non-opposition.  ECF Nos. 30-32.[1]

---

[1] The Sacramento Police Department did not separately file a statement of non-opposition. Because the Police Department is a municipal department of the City, the City itself is the proper

1

The matter was taken under submission by the District Judge formerly assigned to this case on May 14, 2020. ECF No. 33. Following the consent of all parties, this case was reassigned to the Magistrate Judge for all purposes. ECF No. 38. For the reasons discussed below, the court GRANTS plaintiffs' motion for preliminary approval of class action settlement on the terms provided at the conclusion of this order.

## I.   BACKGROUND

### A.   Factual and Procedural Background

On March 18, 2018, Stephon Clark was fatally shot in his grandmother's backyard. ECF No. 1 at 3. On March 2, 2019, Sacramento County District Attorney Anne Marie Schubert announced that the Sacramento County District Attorney's Office would not prosecute Terrence B. Mercadal and Jared E. Robinet, the two Sacramento Police Department officers responsible for shooting and killing Stephon Clark. Id. This announcement resulted in public protests. Id. On March 4, 2019, a large group of law enforcement officers from various local law enforcement agencies, including each of the defendants in this case, arrested or ordered the arrest of approximately 84 persons who marched in East Sacramento. Id. at 3-4.

Plaintiffs assert various federal and state law claims, including: (1) "False Detention/Arrest," U.S. Const., Amend. IV (42 U.S.C. § 1983); (2) "Unreasonable Search," U.S. Const., Amend. IV (42 U.S.C. § 1983); (3) "Unreasonable Force," U.S. Const., Amend. IV (42 U.S.C. § 1983); (4) "Retaliation," U.S. Const., Amend. I (42 U.S.C. § 1983); (5) "Equal Protection," U.S. Const., Amend. XIV (42 U.S.C. § 1983); (6) "False Detention/Arrest," Cal. Const., art. I, § 13; (7) "Unreasonable Search," Cal. Const., art. I, § 13; (8) "Unreasonable Force," Cal. Const., art. I, § 13; (9) "Retaliation," Cal. Const., art. I, §§ 2, 3; (10) "Equal Protection," Cal. Const., art. I, § 7(a); (11) "Bane Act," Cal. Civ. Code § 52.1; (12) "False Imprisonment"; (13) "Assault/Battery"; (14) "Intentional Infliction of Emotion Distress"; and (15) "Negligence." ECF No. 1 at 12-32. Plaintiffs seek monetary and punitive damages and equitable relief. Id. at 32-33.

---

defendant in this § 1983 lawsuit. See United States v. Kama, 394 F.3d 1236, 1240 (9th Cir. 2005); Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995). Plaintiff's claims against the Police Department properly lie against the City, and the City's statement of non-opposition is therefore sufficient.

On March 10, 2020, the parties submitted a notice of a tentative class action settlement which "if approved by the Court, would dispose of this entire action, including all claims alleged against all parties." ECF No. 27 at 2. The parties submitted the motion for preliminary approval of class action settlement which is now before the court on April 30, 2020.

### B.     Proposed Settlement Agreement

The Settlement Agreement provides that each of those persons who was arrested on March 4, 2019, and transported to Cal Expo for processing incident to a protest of the Sacramento County District Attorney Office's decision not to file criminal charges against the Sacramento Police Department police officers who shot and killed Stephon Clark, will receive Notice of the Settlement and a Claim Form to be used to seek reimbursement for medical expenses incurred within a week of the incident. They will be informed of their right to opt-out of the settlement and/or to object to the settlement. Those who do not opt-out of the settlement will be bound by its terms and all Defendants will be released of all further claims.

Each member of the class of persons arrested and transported to Cal Expo for processing will receive Four Thousand Dollars ($4,000); each of the four Representative Plaintiffs will receive an incentive fee of Seven Thousand Dollars ($7,000); and The Law Office of Mark E. Merin, class counsel, will receive Eighty-Two Thousand Eight Hundred Dollars ($82,800) from a settlement paid by the City of Sacramento in the amount of Four Hundred Fourteen Thousand Dollars ($414,000.00). The City of Sacramento will also pay an additional amount of Fifty Thousand Dollars ($50,000) to establish a medical expense fund from which reimbursement will be made to Class Members who submit Compensable Claims for medical expenses incurred for treatment initiated within a week following the March 4, 2019 incident.

Each Class Member will receive an additional amount of approximately Five Hundred Ninety-Five Dollars ($595) from the sum of Fifty Thousand Dollars ($50,000) to be paid by the County of Sacramento. To qualify for reimbursement of certain medical expenses, the Class Members will be informed that they must submit a claim form documenting that the claimant incurred expenses for medical treatment initiated within one week from the March 4, 2019, incident. The claim forms will be jointly reviewed by the Sacramento City Attorney's Office and

1  Class Counsel and either approved for payment, denied, or disputed.  Disputed claims will be
2  referred to the Court for final decision on the compensability of the claims based on the claim
3  forms and any supporting material provided with the claims.  In the event that the total of
4  approved medical reimbursement claims exceeds $50,000, payment for medical reimbursement
5  will be reduced proportionately; if the total of approved medical reimbursement claims is less
6  than $50,000, the amount remaining in the fund will be returned to the City of Sacramento.  If,
7  after payment of all claims, a balance remains from uncashed settlement checks, that residue will
8  be donated to a non-profit corporation selected by Class Counsel in consultation with
9  Representative Plaintiffs.

## II.   LEGAL STANDARDS

### A.   Preliminary Class Certification and Approval of Settlement under Rule 23

#### 1.   Preliminary Class Certification

Rule 23 of the Federal Rules of Civil Procedure does not expressly provide for preliminary class certification; however, district courts often certify settlement classes on a preliminary basis for settlement purposes while deferring final class certification until the court holds a final fairness hearing.  See, e.g., Aguilar v. Wawona Frozen Foods, No. 1:15-CV-00093 DAD EPG, 2017 WL 117789, at *7 n.9 (E.D. Cal. Jan. 11, 2017) (citations omitted).  When it reviews class certification, the court owes "undiluted, even heightened, attention" to certification requirements in the settlement context.  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997); Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003), overruled on other grounds by Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010); see Berry v. Baca, No. CV 01-02069 DDP, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005) (the parties cannot merely "agree to certify a class that clearly leaves any one requirement unfulfilled").  Preliminary certification is appropriate only if each Rule 23(a) certification prerequisite is satisfied.  Rule 23 requires that the class contain enough members; the suit involves questions common to all class members; plaintiff's claims are typical of the class members; and plaintiff and his counsel fairly and adequately protect the class interests.  Fed. R. Civ. P. 23(a)(1)-(4).  If Rule 23(a)'s threshold requirements are met, the proposed class must satisfy Rule 23(b)(3)'s predominance and

1    superiority requirements.  Fed. R. Civ. P. 23(b)(3); see Amchem, 521 U.S. at 615.

2                    2.         Preliminary Settlement Approval

3    Rule 23 requires that "[t]he claims, issues, or defenses of a certified class ... may be
4    settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P.
5    23(e). "Courts have long recognized that settlement class actions present unique due process
6    concerns for absent class members." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935,
7    946 (9th Cir. 2011) (citation and internal quotation marks omitted).  When approval of a
8    settlement agreement negotiated prior to formal class certification is at issue, "there is an even
9    greater potential for a breach of fiduciary duty owed the class during settlement." Id. Thus, the
10   reviewing court analyzes such agreements with "a more probing inquiry" for evidence of
11   collusion or other conflicts of interest than ordinarily required under the Federal Rules. Hanlon v.
12   Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998), overruled on other grounds by Wal-Mart
13   Stores, 564 U.S. at 338; see also Bluetooth, 654 F.3d at 946.  "Judicial review must be exacting
14   and thorough." Manual for Complex Litigation (Fourth) § 21.61 (2004).

15   There is a "strong judicial policy" favoring settlement of class actions. Class Plaintiffs v.
16   City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nonetheless, to protect due process rights
17   of absent class members, Rule 23(e) allows claims of a certified class to be "settled ... only with
18   the courts approval" and "only after a hearing and only on a finding [that the agreement is] fair,
19   reasonable, and adequate ...." Fed. R. Civ. P. 23(e).  To evaluate whether a proposed class action
20   settlement is fair, reasonable and adequate, courts consider several factors, as relevant, including:
21   (1) [T]he strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of
22   further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the
23   amount offered in settlement; (5) the extent of discovery completed and the stage of the
24   proceedings; (6) the experience and view of counsel; (7) the presence of a governmental
25   participant; and (8) the reaction of the class members of the proposed settlement. In re Online
26   DVD-Rental Antitrust Litig., 779 F.3d 934, 944 (9th Cir. 2015) (quoting Churchill Vill., L.L.C. v.
27   Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)); In re Tableware Antitrust Litig., 484 F. Supp. 2d
28   1078, 1080 (N.D. Cal. 2007) (noting that, at preliminary approval stage, courts consider whether

"the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval . . .") (citations omitted).

These factors substantively track those effected through 2018 amendments to Rule 23(e)(2), under which the court may approve a settlement only after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D). The Rule 23(e)(2) factors took effect on December 1, 2018 and, as an advisory note to the Rule 23(e) amendment recognizes, "each circuit has developed its own vocabulary for expressing […] concerns" regarding whether a proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2) advisory committee's note. The codified factors are not intended "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id. Indeed, the Advisory Committee warned against allowing "[t]he sheer number of factors [to] distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note. Thus, the court draws on the Ninth Circuit's longstanding guidance and the Rule 23(e)(2) factors as relevant to resolve this motion.

////

### III. DISCUSSION

A. <u>Preliminary Certification of the Class Under Rule 23</u>

At the preliminary stage, "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Advisory Committee 2003 Note on Fed. R. Civ. P. 23(c)(1). Here, the parties have provided clear explanations of how each factor is met, as discussed below. The court is satisfied that preliminary certification is appropriate.

#### 1. <u>Rule 23(a)(1) – Numerosity</u>

The class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no set numerical cutoff used to determine whether a class is sufficiently numerous; courts must examine the specific facts of each case to evaluate whether the requirement has been satisfied. See <u>General Tel. Co. v. EEOC</u>, 446 U.S. 318, 329-30 (1980). Plaintiffs "need not state the exact number of potential members nor identify all the members of the class so long as the putative class is not amorphous." <u>Arnold v. United Artists Theatre Circuit, Inc.</u>, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (internal quotation omitted). "As a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." <u>Ikonen v. Hartz Mountain Corp.</u>, 122 F.R.D. 258, 262 (S.D. Cal. 1988).

In this case, numerosity is satisfied because City Defendants' arrest records produced during the mutual exchange of pre-settlement discovery (Merin Decl., ¶4), and the numerous contacts that representative plaintiffs have had with putative class members, indicate that a class of 40 or more class members exists.

#### 2. <u>Rule 23(a)(2) – Commonality</u>

The commonality element requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Not all questions of fact and law must be common to satisfy the rule. <u>Hanlon</u>, 150 F.3d at 1019. Only "a single common question" is required. <u>Dukes</u>, 564 U.S. at 359. But the "claims must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will

7

resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350.

The putative class action here contains many common issues of law and fact, including: (1) whether there existed a municipal custom of falsely arresting persons carried out by City and County Defendants and, if so, (2) whether class members experienced the violation of their rights as a result of such customs. See Aichele v. City of Los Angeles, 314 F.R.D. 478, 490 (C.D. Cal. 2013); Huynh v. Harasz, No. 14-CV-02367-LHK, 2015 WL 7015567, at *7 (N.D. Cal. Nov. 12, 2015) ("The common questions of whether or not Defendants actually adopted a blanket policy and whether or not such a policy is illegal will therefore resolve, in one stroke, the legal disputes at issue in this case."). The putative class here meets the commonality requirement of Rule 23 for purposes of preliminary approval.

### 3. Rule 23(a)(3) – Typicality

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)). Under this "permissive" requirement, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014) (quoting Hanlon, 150 F.3d at 1020).

For the same reasons demonstrating that commonality exists, the requirement of typicality is met. Plaintiffs and the class members were subject to same alleged violations of their rights, pursuant to the same policies and/or customs, and "differences in physical contact and injury [do not] defeat typicality … because they are permissible variations within a class." Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles, 246 F.R.D. 621, 632 (C.D. Cal. 2007). Nothing indicates the named plaintiffs' claims are atypical of the putative class. As a result, the class meets the typicality requirement, preliminarily.

1               4.      Rule 23(a)(4) – Adequacy

2       The adequacy requirement is satisfied only if the representative plaintiffs "will fairly and
3 adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Courts must consider
4 whether "(1) [ ] the named plaintiffs and their counsel have any conflicts of interest with other
5 class members and (2) [ ] the named plaintiff and their counsel [will] prosecute the action
6 vigorously on behalf of the class[.]"  Hanlon, 150 F.3d at 1020.  "Serious conflicts of interest can
7 impair adequate representation by the named plaintiffs, yet leave absent class members bound to
8 the final judgment, thereby violating due process."  In re Volkswagen 'Clean Diesel' Mktg., Sales
9 Practices, & Prod. Liab. Litig., 895 F.3d 597, 607 (9th Cir. 2018).

10      Here there are no indications that representative plaintiffs have any conflicts of interest
11 with the class members, and they appear sufficiently motivated to vigorously pursue the interests
12 of the absent class members in this case. Merin Decl., ¶7.  Plaintiffs' interests appear to be
13 aligned with those of the class; nothing in the record currently before the court suggests
14 otherwise.  The proposed representative award of $7,000 does not appear to incentivize plaintiff
15 to act contrary to the interests of the class as a whole.

16              5.      Rule 23(b) – Superiority

17      The court must also be satisfied "that a class action is superior to other available methods
18 for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "The superiority
19 inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular
20 class action procedure will be achieved in the particular case," which "necessarily involves a
21 comparative evaluation of alternative mechanisms of dispute resolution."  Hanlon, 150 F.3d at
22 1023 (citation omitted).

23      Here, as noted above, individual resolution of each class member's dispute would require
24 80 or more separate lawsuits. ECF No. 29-1 at 5.  The parties indicate that there is not any
25 litigation concerning the controversy already begun by or against class members. Id. at 15.  Here,
26 each class member has a limited interest in individually bringing their own action as the damages
27 arising from each constitutional violation may not be significant, or alternatively, each class
28 member is not likely to pursue their individual claims given the fact that they may be ignorant of

9

1   their rights.  Class action is therefore the superior vehicle for resolving this dispute.

2              6.      Rule 23(b) – Predominance

3       "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

4   cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623.  While similar to

5   Rule 23(a)'s commonality requirement, the predominance requirement is more demanding.  Id. at

6   624; Dukes, 564 U.S. at 359.  "When common questions present a significant aspect of the case

7   and they can be resolved for all members of the class in a single adjudication, there is clear

8   justification for handling the dispute on a representative rather than on an individual basis."

9   Hanlon, 150 F.3d at 1022 (quoting Charles Alan Wright, et al., 7AA Federal Practice &

10  Procedure § 1778 (2d ed. 1986)).  But it is important to proceed with "caution when individual

11  stakes are high and disparities among class members great."  Amchem, 521 U.S. at 625.

12      Common issues predominate over individual issues in this case.  See, e.g., MacNamara v.

13  City of New York, 275 F.R.D. 125, 146-54 (S.D.N.Y. 2011) (certifying Fed. R. Civ. P. 23(b)(3)

14  classes based on mass arrests, excessive detention, and conditions of confinement, stating "the

15  predominant issue here turns not on the circumstances of particular arrests, but on the existence of

16  a policy or practice of conducting mass arrests whether or not individualized probable cause

17  existed").  The class claims here are not the same as, or dependent upon, any individualized

18  claim(s) that representative plaintiffs or class members might otherwise allege.  The court finds

19  that class-wide concerns predominate, and the class meets this requirement of Rule 23 at this

20  stage.

21          B.  Terms of the Proposed Agreement

22      Considering the court's duty to absent class members, the undersigned will "review class

23  action settlements just as carefully at the initial stage as [it] do[es] at the final stage."  Cotter v.

24  Lyft, Inc., 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016); see Smothers v. Northstar Alarm Servs.,

25  LLC, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294, at *10 (E.D. Cal. Jan. 22, 2019).

26      Under Rule 23(e), a court may approve a class action settlement only if the settlement is

27  fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2); Bluetooth, 654 F.3d at 946.  Although

28  the court must weigh several factors to approve a settlement, additional factors may be relevant

10

depending on the context of the case and the terms of the agreement. See Bluetooth, 654 F.3d at 946 ("The factors in a court's fairness assessment will naturally vary from case to case ....).

### 1. Fairness and Adequacy of Terms

The proposed terms of settlement, outlined above, contain no obvious defects. Further, plaintiffs have sufficiently explained several potential impediments to full recovery in this case, and the prospects of plaintiffs' losing at trial or on appeal, with all attendant costs, indicate the settlement recovery here is reasonable. ECF No. 29-1 at 8-9.

### 2. Fairness and Adequacy of Notice and Claim Forms

"Adequate notice is critical to court approval of a class settlement under [Fed. R. Civ. P.] 23(e)." Hanlon, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Village, LLC v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004) (internal cite & quotations omitted).

The parties have jointly prepared a Class Notice (Merin Decl., Ex. A [Settlement Agreement] at Attachment 2) and Claim Form (id. at Attachment 3) that meet the standards of "the best notice practicable," pursuant to Fed. R. Civ. P. 23(c)(2)(B). Class members will be identified by citations and the City Defendants' arrest records. The Class Notice adequately informs class members of the nature of the litigation, the essential terms of the settlement agreement, and how to make a claim, elect not to participate ("opt-out"), or object to the settlement. Merin Decl., Ex. A [Settlement Agreement] at Attachment 2. Further, the Class Notice identifies class counsel, specifies the amounts of the class representatives' incentive payment, class counsel attorneys' fees payment, and the settlement administrator's payment that plaintiffs and class counsel will seek, and explains how to obtain additional information regarding the action and the settlement. Id.

Within seven (7) days after preliminary approval of the Settlement Agreement by the Court, the Class Notice and Claim Form will be mailed, posted, or personally delivered to each potential class member at their last-known address, or obtained by other means, as necessary. Merin Decl., ¶ 6. These procedures provide the best possible notice to the class members.

11

3.  Arm's Length Settlement Negotiations

The court also considers whether the parties reached their settlement agreement through arm's length negotiations. Fed. R. Civ. P. 23(e)(2)(B); In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080 (considering whether "proposed settlement appears to be the product of serious, informed, non-collusive negotiations"). In this case, the parties inform the court that, through independent counsel of their choice, they conducted extensive settlement discussions, spanning several months, that were ultimately successful in producing the instant settlement agreement. Merin Decl., ¶¶ 3-4. During settlement discussions, the parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case. Id., ¶4.

Specifically, Plaintiffs produced 84 pages of citations, identifying putative class members names and addresses. Id. City Defendants produced hundreds of pages of documents relating to the arrests, including photos, 9-1-1 radio dispatch audio recordings, computer-aided dispatch ("CAD") logs, detention certificates, notices to appear, government claims, police reports, arrest processing logs, and relevant Sacramento Police Department general orders. Id. County Defendants produced several documents relating to the arrests, computer-aided dispatch ("CAD") logs, government claims, incident reports, relevant Sacramento County Sheriff's Department operation orders, and three video recordings. Id. Based upon the representations made to the court, the settlement appears to be the result of non-collusive, arms-length negotiations.

4.  Adequate Representation

Whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal treats class members equitably relative to each other" also factor into the court's assessment of whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2)(A), (D). Thus, a proposed agreement should "not improperly grant preferential treatment to class representatives or segments of the class . . . ." In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080. Here, plaintiffs as the class representatives request a payment of $7,000, in recognition of their efforts in obtaining the benefits of the settlement for the Settlement Class, and in acting as representative plaintiffs in this action. Merin Decl., ¶ 31.

An excessive class representative service award may be an indication that the named class

member is not adequately representing the interests of the class. Flores v. ADT LLC, No. 1:16-CV-00029 AWI JLT, 2018 WL 6981043, at *1 (E.D. Cal. Mar. 19, 2018) (citing Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013)). The court ultimately will grant an incentive award only upon receiving "evidence demonstrating the quality of plaintiff's representative service,' such as 'substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs.'" Flores, 2018 WL 6981043, at *1 (quoting Reyes v. CVS Pharmacy, Inc., No. 1:14-CV-00964-MJS, 2016 WL 3549260, *15 (E.D. Cal. June 29, 2016)); In re Online, 779 F.3d at 947 (court considers "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment"). Specifically, this court and others have adopted the following factors to determine whether to approve an enhancement payment: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995); see also Zakskorn v. Am. Honda Motor Co., Inc., 2:11-CV-02610 KJM, 2015 WL 3622990, at *17 (E.D. Cal. June 9, 2015).

This court has found requests of $2,500 per representative, in cases involving three representatives, to be presumptively reasonable. See Zakskorn, 2015 WL 3622990, at *17. In cases in which the class representative requested an enhancement payment of $10,000, this court has required evidence of substantial effort throughout a protracted case. See, e.g., Smothers v. NorthStar Alarm Services, LLC, No. 2:17-CV-00548 KJM KJN, 2020 WL 1532058, at *12 (E.D. Cal. Mar. 31, 2020) (awarding a $10,000 enhancement payment to each representative plaintiff when they submitted declarations describing their 100 hours of work each). "Whether to authorize an incentive payment to a class representative is a matter within the court's discretion." Id. at 11. "[C]ourts may consider the following factors: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class

representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation" Id. (citing Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

An incentive award of $7,000 for each of the four representative plaintiffs is a substantial request, particularly given the short timeline of this case – less than 10 months from filing to the notice of settlement. ECF Nos. 1, 27. The plaintiffs have not submitted information regarding the effort expended, assumed risk, personal difficulties, or personal benefits assumed by the class representatives. While this does not preclude preliminary approval, and the undersigned does not mean to suggest that the amount is excessive, the court will review the reasonableness of the incentive award amount at the final fairness hearing; the representative plaintiffs are strongly encouraged to submit declarations substantiating the hours and level of work they have each put into this case. Further, at the final approval stage, plaintiffs should include an analysis of the "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment." In re Online DVD-Rental Antitrust Litig., 779 F.3d at 947.

### 5. Attorneys' Fees

The court also considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "The Ninth Circuit has approved two methods of assigning attorney's fees in common fund cases: the "percentage of the fund" method and the "lodestar" method." Ontiveros v. Zamora, 303 F.R.D. 356, 372 (E.D. Cal. 2014). The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees, and "courts may adjust this figure upwards or downwards if the record shows special circumstances justifying a departure." Id. (internal quotation marks omitted) (citing In re Bluetooth, 654 F.3d at 942). The Ninth Circuit has also approved the use of lodestar cross-checks to determine the reasonableness of a particular percentage recovery of a common fund. Seguin v. City of Tulare, No. 1:16-CV-01262 DAD SAB, 2018 WL 1919823, at *6 (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002)).

Here, the proposed settlement includes an attorneys' fee and expense award of Eighty-Two Thousand Eight Hundred dollars ($82,800.00) representing twenty percent (20%) of that portion of the Settlement Fund. ECF No. 29-2 at 15. While this amount is substantial considering the short duration of this case, it is within the Ninth Circuit benchmark range. Further, the court is disinclined to penalize the efficient, good faith resolution of cases. Finally, as discussed above, counsel has engaged in discovery practice and has done the work to negotiate a settlement for the class. Thus, the undersigned finds the fee and expense award appropriate on a preliminary basis.

### 6. Notice

"The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement]...." Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23's provision for notifying class members of class certification, the notice must state in plain, easily understood language:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i). Furthermore, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). "In a Rule 23(b)(3) class, the notice and any Internet Web site should include opt-out forms." Ann. Manual Complex Lit. § 21.312 (4th ed.). "[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself

15

1   from the class by executing and returning an 'opt out' or 'request for exclusion' form to the
2   court." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985).

3        Here, the proposed notice of settlement includes the necessary background information
4   about the nature of the action, the class itself, as well as the process that led to the proposed
5   settlement. Merin Decl., Ex. 2, Notice (ECF No. 29-2at 41-53). The notice explicitly mentions
6   that a class member may enter objections through an attorney if the class member so desires. Id.
7   at 44. The notice identifies and lists the contact information for plaintiff's counsel and counsel
8   for defendants (id.) and states class members can contact plaintiff's counsel if they have questions
9   about the settlement. Id. at 45. The notice then discusses how a class member may opt out of the
10  settlement. Id. at 41, 43.

11       Plaintiffs have provided a proposed claim form (ECF No. 29-2 at 47) but have not
12  provided an opt-out form for class members to complete and return should they wish to opt out of
13  the settlement. Plaintiffs must include an opt-out form or opt-out provision on the claim form that
14  provides clear instructions regarding the process for opting-out, including the address class
15  members should return the form to, and the notice also describes the difference between opting-
16  out and objecting to the settlement, as well as the separate processes for each. The notice
17  correctly informs class members when counsel and plaintiff will file their respective motions for
18  attorneys' fees and costs and an incentive award, and where and how class members may review
19  those documents. ECF No. 29-2 at 44-45. Importantly, the class members may contact class
20  counsel for more information or to review the relevant documents. Id. at 45.

21       The proposed notice is reasonable in all respects, except for the failure to provide an opt-
22  out form. Because this deficiency is easily correctable, the court will GRANT approval of the
23  form of the notice, contingent on the filing within fourteen days of an opt-out form that meets the
24  requirements described above.

25                 **IV.   CONCLUSION**

26       For the foregoing reasons, the court HEREBY MAKES THE FOLLOWING
27  DETERMINATIONS AND ORDERS:
28       1. The court finds, on a preliminary basis, that the Settlement Agreement incorporated in

16

full by this reference and made a part of this order granting preliminary approval: (1) is the product of informed and non-collusive negotiations; (2) has no obvious deficiencies; (3) falls within the range of possible approval; and (4) the Class Notice (Attachment 2) and Claim Form (Attachment 3) are, in all respects, fair, reasonable, adequate, and in compliance with all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, the California and United States Constitutions <u>except</u> that the parties failed to include an opt-out form, <u>which shall be filed within 14 days of this order as instructed above,</u> as described below.

2. The court also finds that, on a preliminary basis, the Settlement is fair, just, adequate, and reasonable to all members of the Class when balanced against the probable outcome of further litigation relating to class action certification, liability and damages issues, and potential appeals of rulings. Good cause appearing, the motion for preliminary approval of class action settlement is GRANTED.

3. As part of preliminary approval, the court finds for settlement purposes only, that the class meets the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and conditionally certifies the class for the purposes of settlement as: All individuals who were detained/arrested on March 4, 2019, on the 51st Street overpass and transported to Cal Expo for processing and release.

4. The court approves and appoints plaintiffs as the Representative Plaintiffs of the Class for settlement purposes only, subject to Final Approval. Any Settlement Class Member who does not elect to be excluded from the Settlement by submitting a Request to be Excluded by the Objection/Exclusion Deadline may, but need not, enter an appearance in this Action through his or her own attorney.  Settlement Class Members who do not enter an appearance through their own attorneys will be represented by Class Counsel.

5. The court approves and appoints plaintiff's counsel as Class Counsel for settlement purposes only, subject to Final Approval.

6. The court finds the proposed class notice and the proposed method of dissemination reasonably and adequately advises the class of the information required by Federal Rule of Civil Procedure 23(c)(2)(B), with the exception of the failure to include an opt-out form, as discussed

above.  The court APPROVES the proposed class notice CONTINGENT ON the filing within fourteen days of an appropriate opt-out form correcting this deficiency.

7.  The court finds the mailing to the class members' present and last known address, with safeguards to perform reasonable skip traces of returned as undeliverable Notice Packets, constitutes an effective method of notifying class members of their rights with respect to the proposed settlement.  Accordingly, it is hereby ORDERED that:

a. Not later than 21 days from the court's issuance of a minute order confirming the court's acceptance of the opt-out notice required in (6) above as satisfying the contingency and resulting approval of the proposed class notice, the parties shall mail the Notice Packets to each class member, by first class United States mail, postage pre-paid. The exterior of the mailing envelope shall include the following language below the administrator's address:

> Important Legal Document:
>
> You may get Money from a Class Action Settlement; your prompt reply to correct a bad address is required

8.  IT IS FURTHER ORDERED that:

a. Requests for Exclusion: Requests for exclusion from the settlement must be mailed counsel at any address provided for in the class notice, postmarked no later than 45 days from the initial mailing of the Notice Packets to the class.  If the notice response deadline falls on a Saturday or federal holiday, it will be extended to the next day when the U.S. Postal Service is open.

b. Objections:  Any Settlement Class Member who did not elect to be excluded from the Settlement by submitting a Request to be Excluded by the Objection/Exclusion Deadline may, but need not, submit objections to the proposed Settlement by filing and serving an Objection to the Settlement by the Objection/Exclusion Deadline: no later than 45 days from the initial mailing of the Notice Packets to the Class.  Notices of objection to the settlement may be mailed to counsel at any address shown in the class notice, by first class U.S. mail on or before the notice response deadline.  Any written notice of objection should be signed by the class member and/or his or her representative; including the objecting class member's name, address, telephone number, the case

name and number as shown in the class notice, the basis for each objection, and whether or not the class member intends to appear at the final approval hearing. Class members may also appear at the time of the final approval hearing to make any objections they may have.

      9. IT IS FURTHER ORDERED that all Settlement Class Members who do not seek to be excluded from the Settlement by submitting a Request for Exclusion by the Objection/Exclusion Deadline are enjoined from proceeding against the Settling Defendants, including their present or former elective and/or appointive boards, agents, servants, employees, consultants, departments, commissioners, attorneys, officials and officers, and all other individuals and entities, whether named or unnamed in the Action, as to the claims asserted in the Action in the event the final settlement is approved.

      10. IT IS FURTHER ORDERED that within fourteen days of the notice response deadline, class counsel shall file their application for awards of reasonable attorneys' fees and litigation expenses and class representative service payments.

      11. IT IS FURTHER ORDERED that counsel shall submit a Motion for Order Granting Final Approval of the Class Action Settlement with a noticed hearing date in accordance with the Local Rules of this Court and the Standing Orders of Magistrate Judge Allison Claire, located on the court's website. The hearing shall be set to occur not sooner than **80 days** from the date of filing the motion. All papers in support of the Motion for Order Granting Final Approval of the Class Action Settlement shall be filed at least twenty-eight calendar days before the final fairness/final approval hearing.

      12. The final approval hearing shall be held before the undersigned at a date to be noticed in the motion for final approval.

      13. IT IS FURTHER ORDERED that if, for any reason, the court does not execute and file an order granting final approval and judgment, or if the effective date, as defined by the settlement agreement, does not occur for any reason whatsoever, the settlement agreement and the proposed settlement subject of this order and all evidence and proceedings had in connection therewith, shall be null and void and without prejudice to the status quo ante rights of the parties to this litigation as more specifically set forth in the settlement agreement.

14. IT IS FURTHER ORDERED that pending further order of this court, all proceedings in this matter except those contemplated by this order and in the settlement agreement are STAYED.

15. The court expressly reserves the right to adjourn or to continue the final approval hearing from time-to-time without further notice to class members, except that a notice of continuance shall be provided to all class members who submit a notice of objection.  In the event the settlement does not become final for any reason, this preliminary approval order shall be of no further force or effect and the fact that the parties were willing to stipulate to class certification as part of the settlement shall have no bearing on, and not be admissible in connection with, the issue of whether a class should be certified in a non-settlement conference.

The motion for preliminary approval (ECF No. 29) is GRANTED.

IT IS SO ORDERED.

DATED: December 17, 2020

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE